672 So.2d 1124 (1996)
Lafourche Parish Sheriff Craig WEBRE
v.
Steven D. WILSON and the Lafourche Parish Council.
No. 95 CA 1281.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*1125 Frank R. Rathle, Donald F. Harang, Jr., Thibodaux, for Plaintiff-Appellee Lafourche Parish Sheriff Craig Webre.
Linda S. Atchin, Baton Rouge, John L. Lanier, Thibodaux, for Defendants-Appellants Steven D. Wilson and the Lafourche Parish Council.
Before CARTER, PITCHER and CRAIN, JJ.[1]
PITCHER, Judge.
Defendants, Stephen D. Wilson, the Lafourche Parish President, and the Lafourche Parish Council, appeal from a judgment of the trial court granting the relief sought in a petition of mandamus filed by plaintiff, Craig Webre, the Sheriff of Lafourche Parish.[2]

BACKGROUND
In 1976, the Legislature passed an act which allowed for the creation of a law enforcement *1126 district in each parish (except Orleans) for the purpose of providing financing to the sheriff's office, and the sheriff was designated ex officio the chief executive officer of the district. (LSA-R.S. 33:9001). Under LSA-R.S. 33:9003 (entitled "Method of taxation; referendum to increase taxes beyond initial authorization"), funding for law enforcement districts was limited to ad valorem taxes. However, LSA-R.S. 33:9003 was amended in 1982 to add Subsection C, which enabled the law enforcement districts to levy and collect sales taxes.[3]
In 1980, the Lafourche Parish Sales Tax District No. 1 (the taxing entity for the Lafourche Parish Council) proposed and passed a one-half of one percent (½%) sales tax for a ten-year term. The tax revenues were to be dedicated and used to provide additional funds for law enforcement purposes in the Parish of Lafourche in accordance with the following priorities:
1. To the governing authority of the Parish of Lafourche, State of Louisiana, for the purposes of paying the cost of constructing, operating and maintaining jail facilities and minimum security facilities in the Parish, including the cost of feeding and transporting prisoners and medical care therefor, the following percentages of the net revenues of the tax:
0% the first year;
10% the second year;
15% the third year;
20% the fourth year;
25% the fifth year and thereafter.
2. To the Sheriff's Department for the purpose of implementing a law enforcement pay plan together with employee benefits for the Sheriff's Department, which will permit a salary schedule for officers and employees, together with employee benefits ...;
3. To the Sheriff's Department for the purpose of paying the cost of acquiring, operating and maintaining equipment for said Sheriff's Department.
On November 16, 1989, the Lafourche Parish Law Enforcement Sub-District No. 1 was created. According to the evidence introduced at the hearing, the Sheriff of Lafourche Parish at the time, Duffy Breaux, planned to call a sales tax election on behalf of the Sheriff's Office. The Sheriff also intended to omit giving any tax revenues to the Parish Council. Because of Sheriff Breaux's plan to exclude the Parish from receiving any tax revenues, the "parish" decided to oppose the tax. Subsequently, a meeting was held between Breaux, Vernon Galliano (the president of the Lafourche Parish Council at the time), Benny Musso (the business manager for the Sheriff's office), and Steve Gremillion (the parish administrator at the time). At this meeting, an agreement was allegedly reached between Sheriff Breaux and the Lafourche Parish President, Galliano.[4] The alleged agreement stated that the revenues from the 1990 sales tax election were to be distributed as follows:
1. The Sheriff will give to the Lafourche Parish Council 25% of the collections on a monthly basis not to exceed $275,000 annually.
2. In the event the proceeds from the sales tax collections exceed $2,000,000 within the sales tax fiscal year, the proceeds will be distributes [sic] at the rate of 25% on that portion of the collections which exceed $2,000,000.
The $275,000 figure contained in the alleged agreement purportedly was based upon the amount of tax revenues actually collected from 1980-1990.
*1127 The proposition submitted to and passed by the voters in 1990 provided, in pertinent part, as follows:
Shall Law Enforcement Sub-District No. 1 of the Parish of Lafourche, State of Louisiana (the "District"), ... be authorized to levy and collect, and adopt an ordinance providing for such levy and collection, a tax of one-half of one per cent (½%) (the "Tax") upon the sale at retail, the use, the lease or rental, the consumption, and storage for use or consumption, of tangible personal property and on sales of services in the District, ... for a period of ten (10) years from August 1, 1990, with the proceeds of the Tax ... to be dedicated and used for the purpose of providing additional funds for law enforcement purposes in the District, including the cost of acquiring, operating and maintaining equipment for the Sheriff's Department, it being provided, however, that the sum of $275,000 annually, plus 25% of all annual net revenues derived from the Tax in excess of two million dollars shall be dedicated for the purposes of constructing, improving, operating and maintaining jail facilities and minimum security facilities in the Parish, and paying the cost of feeding and transporting prisoners and medical care therefor? (Emphasis ours).
It is undisputed that, from 1990 until July of 1994, tax revenues in the amount of $275,000.00 were remitted annually to the Parish Council by the Lafourche Parish Sheriff. The Parish Council also budgeted this amount yearly and paid all of its obligations to the jail and its prisoners.
In July of 1994, Sheriff Webre stopped sending tax revenues to the Parish Council. At the same time, Sheriff Webre also submitted invoices to the Parish Council for expenses related to feeding, transporting, and providing medical care to prisoners.
The Parish Council refused to pay these invoices.

PROCEDURAL HISTORY
On October 4, 1994, the Sheriff of Lafourche Parish filed a petition for mandamus, asking that the Lafourche Parish Council and its President, Wilson, be ordered to pay the invoices submitted for July and August of 1994, in compliance with its statutory duties set forth in LSA-R.S. 15:703; 33:1430 and 33:1432.
Attached to the petition for mandamus was an order requesting the issuance of an alternative writ compelling and directing Wilson and the Parish Council to pay the Sheriff a total of $56,735.76 or to show cause why a writ of mandamus should not be issued.
Instead of signing the order attached to the petition, the trial court issued an order setting the matter for trial and setting forth the following issues to be addressed by the parties in memorandum submitted to the court:
1. Does the cost of operating the jail, as set out in the sales tax proposition which generated the disputed funds, include the cost of salaries of the personnel working at the jail?
2. Does the statute that created the law enforcement district, LSA-R.S. 33:9001, et seq, require that either the sheriff or the parish council have possession of the disputed funds?
3. Was there a contract between the Law Enforcement District and the Parish to give possession of the disputed funds to the Parish Council? Mixed with this issue is the factual issue of whether there was a written, signed contract between the parties, and did the parties have the capacity to enter into this contract, if indeed the cont[r]act exists at all? Additionally, can a public contract of this nature be oral?
4. Does the "operation of the jail" expenses include the cost of keeping the Department of Corrections prisoners? If the payment received from the Department of Corrections by the Sheriff for the cost of keeping their prisoners does not actually cover the cost of keeping them, is the Parish responsible for the difference?
Thereafter, Wilson and the Parish Council filed an answer to the petition for mandamus and a reconventional demand. In its answer, Wilson and the Parish Council denied all of the allegations contained therein. Wilson and the Parish Council also set forth several affirmative defenses arising from the following *1128 allegations: the Sheriff had in its possession tax revenues (from the 1990 sales tax election) dedicated for "the purposes of constructing, improving, operating and maintaining jail facilities in the Parish, and paying the cost of feeding and transporting prisoners and medical care therefor"; the 1990 sales tax was a renewal or extension of the previous sales tax levied in 1980 by the Lafourche Parish Sales Tax District No. 1; that revenues of $275,000.00, plus 25% of all net revenues derived from the sales tax over $2,000,000.00, should be paid over to the Parish Council pursuant to an agreement reached between Sheriff Breaux and the Parish Council; and that these funds had been used to pay the expenses the Parish Council was obligated to pay under the law.
The reconventional demand also alleged that the Parish Council was entitled a reduction in the invoices for the DOC prisoners housed in the parish jail on the grounds that the Sheriff is compensated by DOC for these expenses. This demand included expenses for the years 1991, 1992, 1993 and 1994.[5]
Thereafter, the Sheriff filed a dilatory exception pleading the objection of unauthorized use of summary proceedings, alleging that (1) the answer filed by Wilson and the Parish Council set forth affirmative defenses not authorized in summary proceedings by the Code of Civil Procedure and (2) the reconventional demand was an ordinary proceeding that could not be heard incidental to a petition for mandamus. The Sheriff also filed a First Supplemental and Amended Petition for Mandamus, requesting that Wilson and the Parish Council be ordered to pay the invoices submitted to the Parish Council for September, October, November, and December of 1994, and January of 1995. This petition also asked that Wilson and the Parish Council be cast for all attorney's fees and costs under LSA-C.C.P. art. 863(D).
Thereafter, Wilson and the Parish Council filed exceptions, alleging that both petitions filed by the Sheriff constituted an improper use of mandamus proceedings and that the Sheriff had no cause of action in mandamus. Wilson and the Parish Council also filed a Cross-Petition for Mandamus, alleging that the Sheriff had failed to file a written, itemized report of the expenditures made by his office, pursuant to LSA-R.S. 42:283 et seq. Wilson and the Parish Council also filed an answer and reconventional demand to the Sheriff's First Supplemental and Amended Petition, reiterating its allegations previously set forth in its original answer and reconventional demand.
A hearing on this matter was held on March 13 and 15, 1995, and, on March 17, 1995, the trial court rendered judgment which ordered, in pertinent part, as follows:
(1) the Lafourche Parish Council pay to the Lafourche Parish Sheriff the sum of $265,692.00 for expenses relating to the keeping and feeding of prisoners at the Lafourche Parish Detention Center from July 1, 1994 through January, 1995, as required by LSA-R.S. 33:1432(1);
(2) the Lafourche Parish Council pay to the Lafourche Parish Sheriff the sum of $2,248.98 for expenses relating to the transportation of prisoners from July 1, 1994 through January, 1995, as required by LSA-R.S. 33:1432(4);
(3) the Lafourche Parish Council pay to the Lafourche Parish Sheriff the sum of $9,200.00 for expenses relating to court appearances from July 1, 1994 through January, 1995, as required by LSA-R.S. 33:1430;
(4) the Lafourche Parish Council receive a credit from the Lafourche Parish Sheriff in the sum of $22,878.97 for expenses relative to the housing of Department of Correction prisoners from July 1, 1994 through January, 1995.
(5) the Lafourche Parish Council pay, prospectively, all expenses relating to the keeping and feeding of prisoners at the Lafourche Parish Detention Center, as required by LSA-R.S. 33:1432, except that the Council is not required to pay for the keeping and feeding of Department of Corrections prisoners.
(6) the Lafourche Parish Council pay, prospectively, all expenses relating to the *1129 transportation of prisoners, as required by LSA-R.S. 33:1432.
(7) the Lafourche Parish Council pay, prospectively, all expenses related to court appearances by Sheriff's Office personnel, as required by LSA-R.S. 33:1430.
(8) each party was to bear its own costs.[6]
The record reflects that on March 20, 1995, in the presence of counsel, the trial court amended the original judgment to add the following:[7]
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Lafourche Parish Council appoint a physician to care for the medical needs of the prisoners at the Lafourche Parish Detention Center, and to fix and pay his salary, as provided by LSA-R.S. 15:703, within ten (10) days of this date.
On March 29, 1995, Wilson and the Parish Council filed a motion for new trial, which was denied by the trial court in open court on April 23, 1995.
Wilson and the Parish Council have appealed, alleging the following assignments of error for our review:
1.
The trial court erred when it denied the Parish's exception of improper use of mandamus proceedings and no cause of action because (1) relief by ordinary means was available to the Sheriff; (2) the delay involved in obtaining ordinary relief will not cause injustice; and (3) the writ is sought to compel performance of a duty which is not purely ministerial.
2.
The trial court erred when it awarded the Sheriff the sum of $6.00 per day per prisoner pursuant to La.R.S. 33:1432 because (1) the Sheriff provided no evidence of a per diem in excess of $3.50 per day approved by the Parish and effective on July, 1994; (2) the payment of any excess over $3.50 per day is a discretionary matter not properly the subject of a mandamus; and (3) the trial court was not legally empowered to award a per diem in excess of the statutory minimum invoiced and prayed for by the Sheriff.
3.
The trial court erred in denying the Parish's affirmative defense grounded in contract because the uncontroverted evidence established the existence of the contract.
4.
The trial court erred in failing to recognize the legally binding contract between the Sheriff and the Parish established by the evidence.
5.
The trial court erred in concluding that the Parish President acted without authority because he was, by law, authorized and empowered to act pursuant to the Lafourche Parish Home Rule Charter.
6.
Alternatively, the trial court erred in not recognizing that the Parish President's actions were authorized by ordinance.

*1130 7.
Alternatively, the trial court erred in not recognizing that the agreement between the Sheriff and the Parish President was ratified and confirmed by the actions of both the Parish and the Sheriff.
8.
The trial court erred in applying the formality requirements of La.R.S. 33:1325 to a home rule governmental body.
9.
The trial court erred in not recognizing that the provisions of La.R.S. 33:1325 are not applicable to the subject contract.
10.
Alternatively, the trial court erred in not recognizing that the formality requirements of La.R.S. 33:1325 were met.
11.
The trial court erred when it found that the term "operating" in the dedication of sales tax revenues includes salaries of Sheriff's Office personnel.
12.
The trial court erred in not recognizing the Parish's affirmative defenses grounded in theories of agency, negotiorum gestio, assumption of obligations and detrimental reliance.
13.
The trial court erred when it limited the Parish's reconventional demand (for reimbursement of jail expenses incurred based upon the ratio of DOC prisoners to the total prison population) to the period beginning July, 1994 and denied recovery for the period from July, 1992 through June, 1994, because recovery is allowed by law for payment of a thing not due.

MANDAMUS
Through a petition for mandamus, the Sheriff of Lafourche Parish seeks to compel the Parish Council to comply with its statutory duties, as set forth in LSA-R.S. 33:1430, 33:1432, and 15:703, respectively.
Mandamus is an extraordinary remedy which is used sparingly by the courts to compel something that is clearly provided by law, and only where it is the sole available remedy or where the delay occasioned by the use of any other remedy would cause an injustice. LSA-C.C.P. arts. 3862 and 3863; Clark v. City of Shreveport, 26,638 p. 8 (La. App. 2nd Cir. 5/10/95); 655 So.2d 617, 621. It is clear that mandamus lies only to compel performance of purely ministerial duties. Louisiana Department of Treasury v. Williams, 451 So.2d 1308, 1311 (La.App. 1st Cir.1984). Our jurisprudence is clear that such writ may not issue to compel performance of an act which contains any element of discretion, however slight. Big Train Construction Company, Inc. v. Parish of St. Tammany, 446 So.2d 889, 890 (La.App. 1st Cir.1984).

STATUTORY DUTIES
LSA-R.S. 33:1430 provides, in pertinent part, as follows:
Except in the parish of Orleans, the governing body of the parish shall pay to the sheriff or his deputies attending upon the sessions of their respective courts of appeal and district courts, reimbursement of not less than sixteen dollars nor more than twenty-five dollars for each day and such sums shall be deposited in the sheriff's general fund.
The applicable provisions of LSA-R.S. 33:1432 are set forth as follows:
The compensation, fees, and costs allowed sheriffs, the parish of Orleans excepted, for all services in criminal matters, shall be the following:
(1) For the keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner. Any surplus funds remaining at the end of the fiscal year shall be returned to the parish governing authority.
* * * * * *
(4) For transportation of prisoners to the penitentiary or other prison, for every *1131 mile which the sheriff or his deputies necessarily travel in going to and returning from, a mileage rate equal to the mileage rate established by the Division of Administration for the use of state owned vehicles. In addition, not more than two deputies shall be compensated at the rate of ten cents per mile for every mile which is necessarily traveled in going to such penitentiary or other prison; and for the expense of each prisoner conveyed, five cents per mile for going only, but not less than five dollars for each prisoner.
LSA-R.S. 15:703 provides as follows:
The governing authority of each parish shall appoint annually a physician who shall attend the prisoners whenever they are sick. His salary shall be fixed by the governing authority.
We find that the statutory duties imposed by the above statutes are purely ministerial, and, thus, the trial court was correct in requiring the Parish Council to comply with the provisions of these statutes. However, we note that each of these statutes sets forth a minimum amount that the governing authority is required to pay for each particular service. The duty of the governing authority to pay the minimum amounts set forth in the statutes is purely ministerial. See Post v. Madison Parish Police Jury, 554 So.2d 198, 201 (La.App. 2nd Cir.1989).
We note that, in determining the amount owed by the Parish Council for the keeping and feeding of prisoners pursuant to LSA-R.S. 33:1432(1), the trial court found that the Sheriff was entitled to $6.00 per day for each prisoner. In its reasons for judgment, the trial court stated that the Parish Council had raised this amount from $3.50 to $6.00 by ordinance.
The record in this matter contains insufficient evidence to support the trial court's conclusion. The only evidence introduced at the hearing on this issue was a resolution passed by the Parish Council on March 26, 1987, which reduces the fee paid for feeding prisoners from $6.00 per day per prisoner to $4.50 per day. The resolution further provides that this reduction is effective April 1, 1987, for the remainder of the 1987 calendar year. This resolution alone does not establish that the Parish Council raised the per diem required in LSA-R.S. 33:1432(1) from $3.50 to $6.00.
For the foregoing reasons, a writ of mandamus can be issued to direct the Parish Council to pay as follows:
(1) Pursuant to LSA-R.S. 33:1430, the Parish Council is required to pay to the Sheriff the sum of sixteen dollars ($16.00) per day for attendance to court sessions by sheriffs and their deputies.
(2) Pursuant to LSA-R.S. 33:1432(1), the Parish Council is directed to pay the sum of $3.50 (three dollars and fifty cents) per day per prisoner to compensate for the keeping and feeding of prisoners.
(3) Pursuant to LSA-R.S. 33:1432(4), the Parish Council is directed to pay a mileage rate equal to the mileage rate established by the Division of Administration for the use of state owned vehicles. Additionally, not more than two deputies shall be compensated at the rate of ten cents per mile for every mile which is necessarily traveled in going to such penitentiary or other prison; and for the expense of each prisoner conveyed, five cents per mile for going only, but not less than five dollars for each prisoner.
(4) Pursuant to LSA-R.S. 15:703, the Parish Council is directed to provide a physician to prisoners and determine the salary to be paid.

MONEY JUDGMENT
The statutory duty of the Parish Council to provide the services enumerated in LSA-R.S. 33:1432, 33:1430, and 15:703 does not necessarily require payment of the invoices submitted by the Sheriff to the Parish Council.[8]
*1132 The Sheriff could easily have used ordinary process, namely a suit for a money judgment, to collect the money allegedly due. Also, there has been no showing that an injustice will be done by denying the use of mandamus. See Board of Commissioners of Lafourche Basin Levee District v. Board of Commissioners Of Atchafalaya Basin Levee District, 340 So.2d 600, 603 (La.App. 1st Cir.1976). Therefore, the use of mandamus proceedings by the Sheriff to collect on money allegedly due from the Parish Council was inappropriate.
Because we have determined that the use of mandamus proceedings to collect money allegedly due is inappropriate, it is unnecessary to address the arguments set forth by the Parish Council in defense of its failure to pay the invoices submitted by the Sheriff (Assignments of Error Numbers Three through Twelve).

CREDIT
The trial court ordered that the Lafourche Parish Council receive a credit from the Sheriff of Lafourche Parish for expenses relative to the housing of Department of Correction prisoners from July 1, 1994 through January, 1995. The trial court further ordered that the Parish Council was not required to pay for the keeping and feeding of Department of Corrections prisoners.
Again, the use of mandamus proceedings to collect a money judgment is inappropriate. However, the Department of Corrections is required to pay a sum to the Sheriff of each parish for the feeding and maintaining of prisoners who have been committed to the Department of Corrections, but who are being held in the parish jail. When the Department of Corrections makes payment, no additional compensation from the parish governing authority shall be paid for the care of such prisoners. LSA-R.S. 15:566A[9] and 15:824B.[10]
Thus, a writ of mandamus can be issued to direct that the Sheriff of Lafourche Parish shall be paid no additional compensation for the keeping and feeding of prisoners committed to the Department of Corrections.

JUDGMENT
The judgment of the trial court dismissing the petition for mandamus filed by Wilson and the Parish Council against the Sheriff is affirmed.
The judgment of the trial court assessing each party with their own costs is affirmed.
The judgment of the trial court is amended as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that the Lafourche Parish Council, as required by LSA-R.S. 33:1432(1), is *1133 directed to pay to the Sheriff of Lafourche Parish, the sum of $3.50 per diem for each prisoner to compensate for the keeping and feeding of prisoners, except that no additional compensation shall be paid for the keeping and feeding of prisoners committed to the custody of the Department of Corrections, as set forth by LSA-R.S. 15:566 and 15:824, from October 4, 1994, the date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Lafourche Parish Council, as required by LSA-R.S. 33:1432(4), is directed to pay to the Sheriff of Lafourche Parish the costs for transportation of prisoners to the penitentiary or other prison, a mileage rate equal to the mileage rate established by the Division of Administration for the use of state owned vehicles; not more than two deputies shall be compensated at the rate of ten cents per mile for every mile which is necessarily traveled in going to such penitentiary or other prison; and for the expense of each prisoner conveyed, five cents per mile for going only, but not less than five dollars for each prisoner, from October 4, 1994, the date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Lafourche Parish Council, as required by LSA-R.S. 33:1430, is directed to pay to the Sheriff of Lafourche Parish the sum of $16.00 per day for the attendance to court sessions by sheriffs and their deputies, from October 4, 1994, the date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Lafourche Parish Council, as required by LSA-R.S. 15:703, is directed to appoint a physician and fix a salary.
In all other respects, the judgment of the trial court is reversed and IT IS ORDERED, ADJUDGED AND DECREED that the application for a writ of mandamus is denied. Costs of this appeal, in the amount of $1,281.60, are to be assessed equally between the Lafourche Parish Council and the Lafourche Parish Sheriff.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART.
CARTER, J., concurs.
NOTES
[1] Judge Hillary Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although Wilson appeals from the trial court's decision, the judgment is silent as to any claims made against Mr. Wilson. Silence in a judgment as to any part of a demand is construed as a rejection of that part of the claim. Hawthorn, Waymouth & Carroll v. Johnson, 611 So.2d 645, 647 (La.App. 1st Cir.1992).
[3] LSA-R.S. 33:9003C provides as follows:

In addition to the taxes authorized by this Section, the district or subdistrict may levy and collect any other taxes authorized by the Constitution of Louisiana to political subdivisions, including a tax upon the sale at retail, the use, lease or rental, the consumption, and the storage for use or consumption of tangible personal property, and on sales of services as defined by law. The tax herein authorized shall be levied and collected only after the question of its imposition has been submitted to and approved by a majority of the qualified voters of the district voting in at a regularly scheduled primary or general election to be conducted in accordance with the Louisiana Election Code. This election may be called by the sheriff and ex officio executive officer of the district.
[4] An undated, unsigned copy of this agreement was introduced into evidence at the hearing.
[5] Wilson and the Parish Council also attempted to remove this case to federal court on October 27, 1994; however, the request for removal was denied on February 16, 1995.
[6] The judgment also dismissed the petition for mandamus filed by Wilson and the Lafourche Parish Council against the Lafourche Parish Sheriff as moot. No appeal was taken from this dismissal.
[7] The amendment of the original judgment by the trial court clearly constituted a substantive alteration of the original judgment in contravention of LSA-C.C.P. art. 1951. Villaume v. Villaume, 363 So.2d 448, 450 (La.1978). LSA-C.C.P. art. 1951 provides that a final judgment may be amended by the trial court at any time by its own motion or pursuant to the motion of any party, to alter the phraseology, but not the substance, of a judgment, or to correct errors in calculation. Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d 908, 911 (La. App. 1st Cir.1991). The proper vehicle for a substantive change in a judgment is a timely motion for a new trial or a timely appeal. Villaume v. Villaume, 363 So.2d at 451. However, it has been recognized that, on its own motion and with consent of the parties, a trial court may amend a judgment substantively, thereby creating a new, final judgment. See Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d at 912; Villaume v. Villaume, 363 So.2d at 451. Neither party has complained about the amendment of the judgment on appeal.
[8] Through the petition for mandamus, the Sheriff sought to compel the Parish Council to pay invoices from July of 1994 through January of 1995 which he had submitted to the Parish Council. The Sheriff claimed that payment of these invoices was mandated by the Parish Council's statutory duty to provide these services.
[9] LSA-R.S. 15:566A provides, in pertinent part, as follows:

The Department of Corrections shall pay the sum of eighteen dollars and twenty-five cents per day to the sheriff of each parish, or to the governing authority of those parishes in which said authority operates the parish jail, for feeding and maintaining each prisoner who has been convicted of a crime and sentenced to imprisonment at a state penitentiary, who is held in the parish jail without bail, pending an appeal....
When the Department of Corrections makes payment in accordance with this Subsection, no additional compensation from the parish governing authority shall be paid for the care of such prisoners.
[10] LSA-R.S. 15:824B provides, in pertinent part, as follows:

(1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from the date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department....
(2) When the state makes payment in accordance with this Subsection, no additional compensation from the parish governing authority shall be paid to the sheriff for the care of those prisoners being held for the department.